UNITED STATES (ALFONSO v.). See Case No. 188.

## Case No. 14,429.

UNITED STATES v. The ALLEGHENY.

[10 Pittsb. Leg. J. 276; 2 Pittsb. Rep. 437.]

District Court, W. D. Pennsylvania. 1863.

PRIZE — OWNER — RESIDENCE WITHIN INSURRECTIONARY STATES—LOYALTY.

1. After seizure, by the surveyor or collector of a port of the United States, a libel is filed to declare the forfeiture.

2. A claimant, who is an inhabitant of an insurrectionary state, takes his status from such state.

3. Whether his capital be great or small, it contributes to swell the means of resistance, and is liable to confiscation.

4. Even his loyalty will not protect him, because, being an integral part of a state in rebellion, he is treated as a public enemy.

5. New Orleans (the residence of claimant) having elected members of congress, the government of the state of Louisiana being yet under the control of the insurgents, the position of the claimant is not changed.

6. The persons "exercising the functions of government" there, not having disclaimed the acts of the insurgents, or suppressed the insurrection, the laws of the United States have not yet been fully vindicated.

7. A vessel owned, in whole or in part, by a resident of New Orleans, found in any other port of the United States, is subject to condemnation.

In admiralty.

Mr. Watson, for claimant.
Mr. Carnahan, U. S. Dist. Atty.

McCANDLESS, District Judge. This was a seizure by the surveyor of the port of Pittsburgh, under the provisions of the act of congress of the 13th July, 1861 [12 Stat. 255]. The libel is filed upon information of the United States district attorney, to declare a forfeiture of the boat. Robert Watson, a citizen and inhabitant of New Orleans, in the state of Louisiana, is the owner of one-fourth of the vessel, the residue being the property of citizens of Pennsylvania. Louisiana is in a state of insurrection against the government of the United States. The act provides that if the insurgents fail to disperse by the time fixed by the president, and when such insurgents claim to act under the authority of any state or states, and such claim is not repudiated, or disclaimed by the persons exercising the functions of government in such state or states, nor such insurrection suppressed in such state or states, then the

president shall declare, by proclamation, that the inhabitants of said state, or parts thereof, are in a state of insurrection against the United States, and all commercial intercourse between them and the rest of the United States shall cease and be unlawful, so long as such condition of hostility shall continue. It is further provided that any ship or vessel belonging, in whole or in part, to any citizen or inhabitant of a state or part of a state so in a state of insurrection, found at sea or in any port of the rest of the United States, shall be forfeited to the United States.

Independent of the admitted facts of this case, the history of this wicked rebellion, of which we have judicial knowledge, places the Louisiana claimant within the category of this law. Even his loyalty will not protect him, for his capital, whether it be great or small, contributes to swell the means of resistance upon the part of the insurgents. Having the misfortune to be an integral part of an insurrectionary state, he takes his status from it, and is treated as a public enemy. His vessel must therefore be condemned, unless we can sustain the defence upon which he relies.

It is contended that inasmuch as New Orleans, his place of residence, is now in possession of the United States, and its citizens have so far returned to their allegiance as to elect members to congress, the reason for seizure has ceased, and the boat should be released from the custody of the officers. After much reflection the court cannot concur in this view of the case. New Orleans was captured by a naval and military force under Commodore Farragut and General Butler, and its possession now is a military occupation by the army of the United States. Its government is a military government; and if, for a single day, it should be divested of the panoply of war, surrounded as it is by the public enemy, the action of its loyal citizens in the election of national representatives would be repudiated by the traitors within its municipal limits. Only a part of Louisiana is in possession of the United States, and, in the language of the act of congress, "the persons exercising the functions of government in such state" have not "disclaimed" the acts of the insurgents, nor has "such insurrection been suppressed by said state." War, with all its tragic incidents, exists there yet, and the whole power of this great nation is brought into activity, to restore the constitutional jurisdiction of the United States. The state government is in the hands of the Confederates, and although the national forces hold its capitol, its principal city, and a large portion of its territory, the laws have not yet been fully vindicated, nor have the people returned to their allegiance. Although by law we are bound to declare a sentence of forfeiture, the secretary of the treasury has power to relieve. And, as we are satisfied of the inflexible loyalty of Robert Watson, we recommend that it be remitted by the secretary upon payment of costs. Decree accordingly.